John C. Carpenter, Esq. (SBN 155610)
*carpenter@cz.law*
Asa Eaton, Esq. (SBN 316888)
*eaton@cz.law*
Alina S. Vulic, Esq. (SBN 337080)
*avulic@cz.law*
Gabriel Minsal, Esq., LL.M. (SBN 347600)
*gminsal@cz.law*
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, California 90211
Telephone: 310-507-7924

*Attorneys for Plaintiffs*

# THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

ESTATE OF GUADALUPE GARCIA, by and through Administrator of Estate; ENGRACIA BRAVO GARCIA, an individual; and CANDELARIO MARTINEZ GARCIA, an individual;

        Plaintiffs,

vs.

COUNTY OF TULARE, a governmental entity; TULARE COUNTY SHERIFF'S OFFICE, a public entity; SHERIFF MIKE BOUDREAUX, an individual; LIETUENANT MEGAN PINHEIRO, an individual; JOELEENA ELENA MCILLWAINE, an individual; JACQUELINE SIMMONS aka JACKIE TREADWAY, an individual; SAMUEL HALSTOM, an individual; JACOB TREADWAY, an individual; EMMA ARELLANO, an individual; and DOES 1-100, inclusive,

        Defendants

) Case No.:
)
)
)
) **COMPLAINT FOR WRONGFUL**
) **DEATH AND SURVIVAL DAMAGES:**
)
) **1.  EXCESSIVE FORCE (42 U.S.C. §**
)      **1983)**
) **2.  NEGLIGENCE**
) **3.  NEGLIGENT HIRING,**
)      **SUPERVISION, AND**
)      **RETENTION**
) **4.  VIOLATIONS OF THE BANE**
)      **CIVIL RIGHTS ACT (CAL.** *CIV.*
)      *CODE* **§ 52.1)**
) **5.  ASSAULT & BATTERY**
)
) **\*DEMAND FOR JURY TRIAL\***
)
)
)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT FOR DAMAGES – DEMAND FOR JURY TRIAL**

**COME NOW**, Plaintiffs ESTATE OF GUADALUPE GARCIA by and through EMMA ARELLANO; ENGRACIA BRAVO GARCIA, an individual; CANDELARIO MARTINEZ GARCIA; and EMMA ARELLANO, an individual (collectively "PLAINTIFFS") who complain and allege against Defendants COUNTY OF TULARE, a municipal government entity; TULARE COUNTY SHERIFF'S OFFICE, a public entity; SHERIFF MIKE BOUDREAUX, an individual; LIEUTENANT MEGAN PINHEIRO, an individual and DOES 1 to 100, inclusive (collectively hereafter "DEFENDANTS"), the following:

### NATURE OF THE ACTION

1.     This wrongful death action is brought by PLAINTIFFS arising out of the July 25, 2022 wrongful death of fifty-seven (57) year old GUADALUPE GARCIA, a deceased individual, who was, without limitation, unreasonably, unlawfully, and in violation of his civil rights, restrained, placed in custody, and deprived of necessary medical services at South County Detention Center (hereafter "SCDC"), located at 1960 W. Scranton Avenue, Porterville, California 93257, a governmental facility, controlled, possessed, and operated by Defendants, COUNTY OF TULARE; TULARE COUNTY SHERIFF'S OFFICE; SHERIFF MIKE BOUDREAUX; LIEUTENANT MEGAN PINHEIRO; and DOES 1 through 100, inclusive, including but without limitation all agents, independent contractors and/or employees of each and all defendants. (collectively altogether as "COUNTY LAW ENFORCEMENT DEFENDANTS").

### THE PARTIES

2.     Decedent GUADALUPE GARCIA ("DECEDENT") passed away on July 25, 2022, at or around 6:56 p.m., and at all relevant times herein, was a resident of the State of California. The DECEDENT was at all times the son of Plaintiffs ENGRACIA BRAVO GARCIA and CANDELARIO MARTINEZ GARCIA and the brother of Plaintiff EMMA ARELLANO. Due to his wrongful death on July 25, 2022, Plaintiff ESTATE OF GUADALUPE GARCIA, by and through administrator EMMA ARELLANO ("ESTATE OF GARCIA"), brings this action to recover survival action damages as a result of COUNTY LAW ENFORCEMENT DEFENDANTS' tortious acts and omissions, wrongful and illegal conduct,

CARPENTER & ZUCKERMAN

and breaches of their duties while DECEDENT was in custody of COUNTY LAW ENFORCEMENT DEFENDANTS at SCDC.

3.      Plaintiff ENGRACIA BRAVO GARCIA was and remains a resident of Tulare County, State of California and is DECEDENT'S mother. Plaintiff ENGRACIA BRAVO GARCIA is entitled to the property of DECEDENT under the laws of intestate and testate succession. Pursuant to, without limitation, the operation of Cal. *Civ. Proc. Code* § 377.60, Plaintiff ENGRACIA BRAVO GRACIA is an heir, a successor in interest, and a person lawfully entitled to assert a cause of action for the wrongful death of the DECEDENT. No other persons have any claim, right, or interest in the cause of action for the wrongful death of the DECEDENT that is superior to the claims brought by PLAINTIFFS.

4.      Plaintiff CANDELARIO MARTINEZ GARCIA was and remains a resident of Tulare County, State of California and is DECEDENT'S father. Plaintiff CANDELARIO MARTINEZ GARCIA is entitled to the property of DECEDENT under the laws of intestate and testate succession. Pursuant to, without limitation, the operation of Cal. *Civ. Proc. Code* § 377.60, Plaintiff CANDELARIO MARTINEZ GARCIA is an heir, a successor in interest, and a person lawfully entitled to assert a cause of action for the wrongful death of the DECEDENT. No other persons have any claim, right, or interest in the cause of action for the wrongful death of the DECEDENT that is superior to the claims brought by PLAINTIFFS.

5.      Defendant COUNTY OF TULARE (hereafter "COUNTY") is and was at all relevant times a public entity and subdivision of the State of California with the capacity to sue and be sued.  At all relevant times herein, Defendant COUNTY is responsible for its actions, omissions, policies, procedures, practices, and/or customs of the COUNTY and its various agents, agencies, and employees, including Tulare County Sheriff's Office and its agents and/or employees.  At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that its actions, omissions, policies, procedures, practices, and/or customs and those of its agents, agencies, and/or employees, including Tulare County Sheriff's Office, complied with the laws and Constitutions of the United States and of the State of California.

6.      PLAINTIFFS are informed and believe, and thereon allege, that Defendant TULARE COUNTY SHERIFF'S OFFICE is and was at all relevant times a public entity with the capacity to sue and be sued. TULARE COUNTY SHERIFF'S OFFICE is responsible for the actions, omissions, policies, procedures, practice and/or customs of its various agents, independent contractors, and/or employees. Defendant TULARE COUNTY SHERIFF'S OFFICE was responsible for assuring that the actions, omissions, policies, procedures, practices, and/or customs of SCDC and its agents, independent contractors, and/or employees complied with the law. Plaintiffs are informed and believe that Defendant TULARE COUNTY SHERIFF'S owned and/or operated the SCDC, where the tortious conduct alleged herein occurred. COUNTY and TULARE COUNTY SHERIFF'S OFFICE are responsible for the unlawful conduct by, without limitation, authorizing, acquiescing, and/or failing to take action to prevent the unlawful conduct that occurred within SCDC from which this lawsuit arises. COUNTY and TULARE COUNTY SHERIFF'S OFFICE are further responsible for the unlawful conduct by, without limitation, failing to adequately hire, train, supervise, discipline, and/or terminate its employees, independent contractors, and/or agents within SCDC.

7.      PLAINTIFFS are informed and believe, and thereon allege, that Defendant SHERIFF MIKE BOUDREAUX was an employee acting in his individual capacity, official capacity within the course and scope of his employment and/or authority with COUNTY, and/or under color of state law.  Defendant SHERIFF MIKE BOUDREAUX is responsible for the unlawful conduct by, inter alia, participating in the conduct and/or jointly acting with others who did so when SHERIFF MIKE BOUDREAUX, without limitation, authorized, acquiesced, and/or failed to take action to prevent the unlawful conduct alleged herein. Defendant SHERIFF MIKE BOUDREAUX is further responsible for, without limitation, the unlawful conduct by acting with deliberate indifference to Plaintiffs' rights, including his failure and/or refusal to initiate and maintain adequate supervision and/or training at the SCDC and by ratifying the unlawful conduct of COUNTY LAW ENFORCEMENT DEFENDANTS' employees, independent contractors, and/or agents, and/or SCDC inmates. Defendant SHERIFF MIKE BOUDREAUX is further responsible for the unlawful conduct by, inter alia, promulgating

policies and procedures pursuant to which the unlawful conduct alleged herein occurred at

SCDC. All allegations against SHERIFF MIKE BOUDREAUX made herein shall be deemed

to mean the acts and omissions of COUNTY, TULARE COUNTY SHERIFF'S OFFICE, and

LIEUTENANT MEGAN PINHIERO individually, jointly, and severally.

8.      PLAINTIFFS are informed and believe, and thereon allege, that Defendant

LIEUTENANT MEGAN PINHIERO was an employee acting in her individual capacity,

official capacity within the course and scope of her employment with COUNTY, and/or under

color of state law.  Defendant LIEUTENANT MEGAN PINHIERO is responsible for the

unlawful conduct by, inter alia, participating in the conduct and/or jointly acting with others

who did so when LIEUTENANT MEGAN PINHIERO, without limitation, authorized,

acquiesced, and/or failed to take action to prevent the unlawful conduct alleged herein.

Defendant LIEUTENANT MEGAN PINHIERO is further responsible for the unlawful conduct

by, inter alia, acting with deliberate indifference to Plaintiffs' rights, including her failure

and/or refusal to initiate and maintain adequate supervision and/or training at the SCDC and by

ratifying the unlawful conduct of COUNTY LAW ENFORCEMENT DEFENDANTS'

employees, independent contractors, and/or agents, and/or SCDC inmates. Defendant

LIEUTENANT MEGAN PINHIERO is further responsible for the unlawful conduct by, inter

alia, promulgating policies and procedures pursuant to which the unlawful conduct alleged

herein occurred at SCDC. All allegations against LIEUTENANT MEGAN PINHIERO made

herein shall be deemed to mean the acts and omissions of COUNTY, TULARE COUNTY

SHERIFF'S OFFICE, and SHERIFF MIKE BOUDREAUX individually, jointly, and severally.

9.      Plaintiffs are informed and believe, and thereon allege, that at all times relevant

and mentioned herein, the Defendants, including DOES 1 through 100 ("DOE

DEFENDANTS"), and each of them, were agents, independent contractors, employees,

employers, co-conspirators, and/or joint venturers of their co-Defendants, and each of them,

were acting within the course, scope and authority of said agency, employment, and/or venture,

and that each and all Defendants, as aforesaid, when acting as a principal, was negligent in the

selection and hiring, retention, training, and/or supervision of each and every other Defendant

as an agent, employee, and/or joint venturer. All allegations against DOE DEFENDANTS made herein shall be deemed to mean the acts and omissions of COUNTY, TULARE COUNTY SHERIFF'S OFFICE, SHERIFF MIKE BOUDREAUX, and/or LIEUTENANT MEGAN PINHIERO individually, jointly, and severally.

10.     The true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise, of Does 1 through 100, inclusive, are unknown to PLAINTIFFS, who therefore sue said defendants by such fictitious names.  The full extent of the facts linking such fictitiously sued defendants is unknown to PLAINTIFFS at this time. PLAINTIFFS are informed and believe and thereon allege that each of the defendants designated herein as a DOE was, and is, negligent, or in some other actionable manner, responsible for the events and happenings hereinafter referred to, and thereby negligently, or in some other actionable manner, legally and proximately caused the hereinafter described injuries and damages to DECEDENT and PLAINTIFFS. PLAINTIFFS will hereafter seek leave of the Court to amend this Complaint to show the defendants' true names and capacities after the same have been ascertained.

11.     For purposes herein, all agents, independent contractors, and/or employees of COUNTY LAW ENFORCEMENT DEFENDANTS referred to in this Complaint, namely agents, independent contractors, and/or employees of Defendants COUNTY OF TULARE, a municipal government entity; TULARE COUNTY SHERIFF'S OFFICE, a public entity; SHERIFF MIKE BOUDREAUX, an individual; LIEUTENANT MEGAN PINHEIRO, an individual; and DOES 1 through 100, inclusive, shall be referred to as COUNTY LAW ENFORCEMENT DEFENDANTS.

12.     Defendant JOELEENA ELENA MCILLWAINE is DECEDENT's alleged daughter. Pursuant to, without limitation, the operation of Cal. *Civ. Proc. Code* § 377.60. Defendant JOELEENA ELENA MCILLWAINE may be an heir, may be a successor in interest, and/or may be a person lawfully entitled to assert a cause of action for the wrongful death of the DECEDENT.

13.     Defendant JACQUELINE SIMMONS aka JACKIE TREADWAY is DECEDENT's alleged daughter. Pursuant to, without limitation, the operation of Cal. *Civ.*

*Proc. Code* § 377.60. Defendant JACQUELINE SIMMONS aka JACKIE TREADWAY may be an heir, may be a successor in interest, and/or may be a person lawfully entitled to assert a cause of action for the wrongful death of the DECEDENT.

14. Defendant SAMUEL HALSTOM is DECEDENT's alleged son. Pursuant to, without limitation, the operation of Cal. *Civ. Proc. Code* § 377.60. Defendant SAMUEL HALSTOM may be an heir, may be a successor in interest, and/or may be a person lawfully entitled to assert a cause of action for the wrongful death of the DECEDENT.

15. Defendant JACOB TREADWAY is DECEDENT's alleged son. Pursuant to, without limitation, the operation of Cal. *Civ. Proc. Code* § 377.60. Defendant JACOB TREADWAY may be an heir, may be a successor in interest, and/or may be a person lawfully entitled to assert a cause of action for the wrongful death of the DECEDENT.

## JURISDICTION AND VENUE

16. This civil action arises from violations of constitutional rights protected by 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution and constitutional rights pursuant to the California constitution and state law. Jurisdiction is established pursuant to 28 U.S.C. §§ 1331 (federal question). PLAINTIFFS' state law claims for relief are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367(a).

17. Venue over claims at issue in this lawsuit is proper pursuant to 28 U.S.C. § 1391(b)(2) in the Eastern District of California because the events and/or omissions giving rise to the claim occurred within this district, in or near the city of Porterville, County of Tulare, California, specifically at SCDC located at 1960 W. Scranton Avenue, Porterville, California 93257.

18. Pursuant to 28 U.S.C. § 2675(a), the claim set forth herein was timely presented to COUNTY LAW ENFORCEMENT DEFENDANTS on January 18, 2023, before two (2) years had elapsed since the acts and/or omissions that caused DECEDENT'S death on July 25, 2022.

19. On February 8, 2023, PLAINTIFFS received a rejection letter on behalf of COUNTY. As such, PLAINTIFFS have timely filed this action within six (6) months of the receipt of the COUNTY LAW ENFORCEMENT DEFENDANTS rejection letter, as stated by statute.

## GENERAL ALLEGATIONS

**A. Prior to the DECEDENT's Untimely and Tragic Death, COUNTY LAW ENFORCEMENT DEFENDANTS' Used Excessive Force to Unlawfully Provoke, Restrain, and/or Place DECEDENT in Custody at the Sierra View Medical Center Emergency Department before Transferring Him to SCDC.**

20. On July 25, 2022, DECEDENT was driving at or about the intersection of Henderson Avenue and Indiana Street, Porterville, California 93257, when he was pulled over by COUNTY LAW ENFORCEMENT DEFENDANTS. DECEDENT cooperated with COUNTY LAW ENFORCEMENT DEFENDANTS and was subsequently detained, handcuffed, and arrested.  At all relevant times, DECEDENT was suffering severe emotional, psychological, and/or psychiatric distress and was known to be suffering from such distress by COUNTY LAW ENFORCEMENT DEFENDANTS.

21. Following his arrest, at or around 2:40 p.m., DECEDENT was taken into custody by COUNTY LAW ENFORCEMENT DEFENDANTS and transported to the Sierra View Medical Center, located at 465 W. Putnam Avenue, Porterville, California 93257, to obtain a medical clearance for incarceration.

22. On arrival, at or around 3:03 p.m., the Sierra View Medical Center Emergency Department medical staff documented DECEDENT was responsive and answering questions. Sierra View Medical Center Emergency Department medical staff further documented DECEDENT was diaphoretic and exhibited some signs of dehydration at this time.  At this time, DECEDENT continued to suffer severe emotional, psychological, and/or psychiatric distress and was known to be suffering from such distress by medical staff and COUNTY LAW ENFORCEMENT DEFENANTS.  According to medical records, DECEDENT was also continuously inquiring about what medical procedures were going to be performed on him.

Throughout this time, DECEDENT did not consent to some laboratory tests and treatments from the Sierra View Medical Center Emergency Department medical staff.

23. At or around 3:16 p.m., Sierra View Medical Center Emergency Department medical staff indicated that DECEDENT was no longer answering questions. At this time, DECEDENT was not consenting to some medical interventions, including refusing laboratory tests.

24. Throughout this time, Sierra View Medical Center Emergency Department medical staff continuously attempted to perform laboratory tests on DECEDENT. Although he did not consent to blood work tests, DECEDENT did consent to an EKG test. Although not consenting to any medication to treat his blood pressure, DECEDENT would continuously ask Sierra View Medical Center Emergency Department medical staff to explain and/or read the treatment or medications they were going to put in his body.

25. It was at or around this time that COUNTY LAW ENFORCEMENT DEFENDANTS sought a warrant to force DECEDENT to undergo laboratory tests performed by Sierra View Medical Center Emergency Department's medical staff.

26. Ultimately, at or around 4:27 p.m., after being presented with a warrant by COUNTY LAW ENFORCEMENT DEFENDANTS, DECEDENT underwent laboratory tests performed by Sierra View Medical Center Emergency Department medical staff.

27. Following these laboratory tests, Sierra View Medical Center Emergency Department medical staff determined that DECEDENT possessed the ability to make autonomous decisions for himself. Throughout this period, Sierra View Medical Center Emergency Department medical staff noted once more that DECEDENT was calm, resting, and, unlike earlier, not diaphoretic. Shortly thereafter, Sierra View Medical Center Emergency Department medical staff discharged DECEDENT into the custody of COUNTY LAW ENFORCEMENT DEFENDANTS.

28. Importantly, upon information and belief, at no time prior to this moment was DECEDENT belligerent, aggressive, or violent towards any Sierra View Medical Center Emergency Department medical staff or COUNTY LAW ENFORCEMENT DEFENDANTS.

In fact, upon information and belief, DECEDENT had complied with orders from COUNTY LAW ENFORCEMENT DEFENDANTS, even before being presented with a court-issued warrant.

29.     It was not until at or around 4:50 p.m., when COUNTY LAW ENFORCEMENT DEFENDANTS forcefully and abruptly attempted to place DECEDENT back into handcuffs that DECEDENT lawfully resisted COUNTY LAW ENFORCEMENT DEFENDANTS' unlawful and abrupt excessive force in their attempts to place DECEDENT in custody at the Sierra View Medical Center Emergency Department. The use of COUNTY LAW ENFORCEMENT DEFENDANTS' unlawful and abrupt excessive force at this moment caused DECEDENT to lawfully resist unreasonable acts of force towards his person.  At all times prior to and during said unlawful and excessive force exerted upon him, DECEDENT continued to suffer severe emotional, psychological, and/or psychiatric distress and was known to be suffering from such distress by medical staff and COUNTY LAW ENFORCEMENT DEFENANTS.

30.     Although using the combined force of over four (4) police officers from COUNTY LAW ENFORCEMENT DEFENDANTS, as well as security personnel from the Sierra View Medical Center Emergency Department, COUNTY LAW ENFORCEMENT DEFENDANTS tased DECEDENT, a fifty-seven (57) year old man, multiple times to incapacitate and restrain him. In the ensuing commotion, DECEDENT sustained several physical injuries, including but without limitation lacerations to his right forehead, nose, and taser barbs to his right abdomen.

31.     Plaintiffs allege COUNTY LAW ENFORCEMENT DEFENDANTS used excessive, unreasonable, and unlawful force upon DECEDENT when restraining his physical body at Sierra View Medical Center Emergency Department.

32.     Once subdued, Sierra View Medical Center Emergency Department medical staff examined a handcuffed DECEDENT and began treating his physical injuries caused as a result of the excessive and unlawful force used by COUNTY LAW ENFORCEMENT DEFENDANTS to forcefully and abruptly handcuff DECEDENT. The medical staff reported

DECEDENT did not lose consciousness at any time, did not complain of chest pain or shortness of breath, or show signs of other symptoms. In fact, Sierra View Medical Center Emergency Department medical staff noted he was alert, oriented, and answering questions in an appropriate manner.

33.     Once this initial treatment was complete, COUNTY LAW ENFORCEMENT DEFENDANTS took a restrained DECEDENT and placed him unto one of COUNTY LAW ENFORCEMENT's vehicles for transportation to SCDC, located at 1960 W. Scranton Avenue, Porterville, California 93257.

**B.  While in COUNTY LAW ENFORCEMENT DEFENDANTS' Custody, COUNTY LAW ENFORCEMENT DEFENDANTS' Unlawful Practices, Policies, Procedures, and/or Supervision of DECEDENT Caused DECEDENT'S Wrongful and Untimely Death.**

34.     At or around 5:10 p.m., DECEDENT arrived at SCDC in the custody of COUNTY LAW ENFORCEMENT DEFENDANTS. Upon arrival, COUNTY LAW ENFORCEMENT DEFENDANTS at SCDC determined DECEDENT did not possess any notable shortness of breath or acute distress while in custody. However, COUNTY LAW ENFORCEMENT DEFENDANTS document that DECEDENT, at the time of his arrival at SCDC, allegedly did not respond appropriately to questions, that his overall appearance looked "disheveled and unkept," and that DECEDENT was quoting scriptures from the Christian New Testament.  At this time, DECEDENT continued to suffer severe emotional, psychological, and/or psychiatric distress and was known to be suffering from such distress by COUNTY LAW ENFORCEMENT DEFENANTS.

35.     At the time of his arrival at SCDC, documentation exists that DECEDENT possessed **new** contusions to his face, specifically in the upper left check and below the left eye. As indicated earlier, and per Sierra View Medical Center Emergency Department medical records, prior to his departure from the Sierra View Medical Center Emergency Department, DECEDENT **did not** possess these contusions; DECEDENT only possessed lacerations to his right forehead, nose, and taser barbs to his right abdomen at that time. These contusions to the

upper left cheek and below the left eye **only** appeared on DECEDENT **after** his arrival at SCDC while in the custody and restraints COUNTY LAW ENFORCEMENT DEFENDANTS.

36.     Upon information and belief, COUNTY LAW ENFORCEMENT DEFENDANTS used excessive force in their continuous unlawful restraint of DECEDENT while traveling to SCDC. As a result of this unlawful conduct by COUNTY LAW ENFORCEMENT DEFENDANTS', DECEDENT sustained new injuries to his upper left cheek and below the left eye, as described in paragraph 35.

37.     Further, COUNTY LAW ENFORCEMENT DEFENDANTS noted that, at the time of DECEDENT's arrival at SCDC, DECEDENT's heart rate and respiration rate were elevated. Nonetheless, COUNTY LAW ENFORCEMENT DEFENDANTS did not prescribe any medications or administer any medical treatment to address his elevated heart rate and respiration.  Based on his condition, medications and/or treatment should have been provided but were not.

38.     Upon information and belief, despite possessing sufficient notice that DECEDENT'S condition, mental state, and well-being was declining, including but without limitation as a result of a combination of DECEDENT'S new physical injuries, elevated respiration and heart rate, and overall presentation, COUNTY LAW ENFORCEMENT deemed DECEDENT "fit for confinement." As such, at or around 5:19 p.m., upon information and belief, DECEDENT was placed in an unpadded jail cell that did not possess the requisite safety measures necessary to adequately care and supervise DECEDENT's condition and actions while at SCDC, especially given that DECEDENT continued to suffer severe emotional, psychological, and/or psychiatric distress and was known to be suffering from such distress by COUNTY LAW ENFORCEMENT DEFENANTS.

39.     Upon information and belief, **between 5:19 p.m. and 6:10 p.m**. of said date, COUNTY LAW ENFORCEMENT **failed to check in, supervise, monitor, and care for** DECEDENT while he was in their custody in the unpadded jail cell that did not possess the requisite safety measures necessary to adequately care and supervise DECEDENT's condition and actions while at SCDC. Upon information and belief, there is **no** document by COUNTY

1    LAW ENFORCEMENT that provides an update of DECEDENT's condition and actions while

2    at SCDC between this time period.

3          40.    Upon information and belief, **it was only around one hour after his**

4    **confinement at SCDC**, at or around 6:10 p.m., that COUNTY LAW ENFORCEMENT

5    checked in on DECEDENT and discovered him unresponsive in his unpadded jail cell.

6    COUNTY LAW ENFORCEMENT performed CPR and life-saving treatment until Emergency

7    Medical Services ("EMS") arrived on the scene at or around 6:15 p.m. From there,

8    DECEDENT was transported by EMS to Sierra View Medical Center.

9          41.    At or around 6:36 p.m., EMS arrived with DECEDENT at the Sierra View

10   Medical Center Emergency Department. At this time, DECEDENT was in cardiac arrest and

11   with CPR in progress when Sierra View Medical Center Emergency Department medical staff

12   began performing life-saving treatment.

13         42.    At or around this time, Sierra View Medical Center Emergency Department

14   medical staff attempted to intubate DECEDENT on several occasions to no avail. Sierra View

15   Medical Center Emergency Department medical staff noted DECEDENT was "very stiff" at the

16   time of his arrival to the Sierra View Medical Center Emergency Department.

17         43.    Ultimately, despite numerous life-saving efforts by the Sierra View Medical

18   Center Emergency Department medical staff, DECEDENT never recovered his pulse and was

19   constantly asystole. As such, Sierra View Medical Center Emergency Department medical staff

20   called DECEDENT's time of death at 6:56 p.m.

21         44.    Without limitation, COUNTY LAW ENFORCEMENT DEFENDANTS, each

22   and every one of them, unreasonably engaged with the DECEDENT without the sufficient

23   training and/or supervision to properly restrain and supervise persons like DECEDENT, who

24   was in their custody and was clearly suffering severe emotional, psychological, and/or

25   psychiatric distress. Without limitation, COUNTY LAW ENFORCEMENT DEFENDANTS

26   repeatedly restrained the DECEDENT, in such improper manner and without sufficient training

27   and/or supervision to properly diffuse encounters with persons like DECEDENT.

28

CZ CARPENTER & ZUCKERMAN

45.     By failing to engage DECEDENT properly, reasonably, and safely, who was at all times in the custody of COUNTY LAW ENFORCEMENT DEFENDANTS, without the sufficient, appropriate and/or required training, tools, protocols, practices, policies, and/or procedures, the actions, omissions, and conduct of the COUNTY LAW ENFORCEMENT DEFENDANTS amounts to a deliberate indifference to DECEDENT's rights.

46.     Further, upon information and belief, the COUNTY LAW ENFORCEMENT DEFENDANTS' failure to train the COUNTY LAW ENFORCEMENT DEFENDANTS, further compounded with a lack of less lethal force, as employed by the COUNTY LAW ENFORCEMENT DEFENDANTS when engaging and restraining persons suffering severe emotional, psychological, and/or psychiatric distress, demonstrates that the COUNTY LAW ENFORCEMENT DEFENDANTS had a consistent policy, practice, and/or procedure of indifference to DECEDENT'S statutory rights, health, and safety. Such policies demonstrate that the COUNTY LAW ENFORCEMENT DEFENDANTS were the primary moving force that caused DECEDENT's severe physical injuries suffered at SCDC at the hands of COUNTY LAW ENFORCEMENT DEFENDANTS, including but without limitation, lacerations to his right forehead, nose, and taser barbs to his right abdomen.

47.     Despite the COUNTY LAW ENFORCEMENT DEFENDANTS' awareness that the COUNTY LAW ENFORCEMENT DEFENDANTS will often encounter persons, like the DECEDENT, who are suffering from severe emotional, psychological, and/or psychiatric distress, COUNTY LAW ENFORCEMENT DEFENDANTS deliberately and/or knowingly failed to properly hire, train, and supervise COUNTY LAW ENFORCEMENT DEFENDANTS, and to implement and maintain proper procedures, practices, policies and/pr protocols to safely, reasonably, and lawfully engage persons like DECEDENT, who was suffering severe emotional, psychological, and/or psychiatric distress.

48.     As a result of the COUNTY LAW ENFORCEMENT DEFENDANTS' aforementioned policy, practice, procedure and/or custom, the encounter between DECEDENT and the COUNTY LAW ENFORCEMENT DEFENDANTS quickly and significantly escalated into an unreasonably dangerous situation which would ultimately lead to DECEDENT's

injuries and untimely death, as alleged hereinabove. This escalation included and resulted in the use of improper and excessive force and unreasonably abusive conduct being applied to DECEDENT, both at the Sierra View Medical Center and further continued on the way to SCDC, which directly and proximately resulted in the DECEDENT's untimely tragic death, while in the custody of COUNTY LAW ENFORCEMENT DEFENDANTS—a death which has caused substantial damages related to PLAINTIFFS the loss of their close and dear family member.

49.     Upon information and belief, the COUNTY LAW ENFORCEMENT DEFENDANTS knew that DECEDENT's life was in danger the moment he was placed in his cell, yet, despite such actual knowledge,  took no action to prevent his entry, and/or took no action to implement or employ reasonable safeguards and/or protocols sufficient to protect the DECEDENT from known dangers, including those dangers based on DECEDENT's actual and/or perceived severe emotional, psychological, and/or psychiatric distress. Upon information and belief, at all relevant times, the COUNTY LAW ENFORCEMENT DEFENDANTS knew the DECEDENT would be at a serious risk of harm, injury or death, if placed in a jail cell that did not possess the requisite safety measures to account for persons suffering from severe emotional, psychological, and/or psychiatric distress including, but not limited to: a padded cell room and the implementation of frequent, continuous checkups, supervision, and/or monitoring. Based on information and belief, SCDC possessed padded jail cell rooms within its location at the time of the incident alleged herein, which were not utilized for DECEDENT.

50.     Upon information and belief, at all relevant times, the COUNTY LAW ENFORCEMENT DEFENDANTS knew the cell, and DECEDENT's placement in such cell, created serious, dangerous, and even fatal conditions when they led DECEDENT into his cell. In fact, upon information and belief, and at all relevant times, the COUNTY LAW ENFORCEMENT DEFENDANTS knew the DECEDENT was suffering from severe emotional, psychological, and/or psychiatric distress and required frequent and continuous supervision and monitoring while at SCDC.

51.     As such, and without limitation, the COUNTY LAW ENFORCEMENT DEFENDANTS unreasonably engaged the DECEDENT without the sufficient training and/or supervision to properly monitor and care for persons suffering from severe emotional, psychological, and/or psychiatric distress while in custody and in jail cells at SCDC, like DECEDENT. Without limitation, COUNTY LAW ENFORCEMENT DEFENDANTS repeatedly failed to monitor DECEDENT adequately and thoroughly, and failed to care, supervise, and implement safety measures and safeguards to prevent DECEDENT from suffering further injuries and harm while at SCDC.

52.     Such improper conduct, omissions and failures on the part of DECEDENT demonstrates that COUNTY LAW ENFORCEMENT DEFENDANTS were the primary moving force that caused DECEDENT's injuries and damages, including, without limitation, DECEDENT'S untimely wrongful death while in the custody and care of COUNTY LAW ENFORCEMENT DEFENDANTS.

53.     As a result of COUNTY LAW ENFORCEMENT DEFENDANTS' aforementioned policy, practice, procedure and/or custom, the COUNTY LAW ENFORCEMENT DEFENDANTS conduct in their placement of DECEDENT in his non-padded jail cell, where he was left unsupervised for an extended period of at or around at least one (1) hour, significantly escalated into an unreasonably dangerous situation which would ultimately lead to DECEDENT's untimely death. These actions, omissions, and/or conduct by COUNTY LAW ENFORCEMENT DEFENDANTS resulted in DECEDENT'S severe physical injuries and trauma, which directly lead to his death in custody,  including, but without limitation, (a) lacerations of the frontal scalp and right cheek; (b) contusions with lacerations of the nose and lateral left periorbital skin/left cheek; (c) contusion of the right occipital scalp; (d) abrasion of the midline submental chin; (e) laceration and contusion of the mucosa of the upper lip; (f) left occipital sub-scalp hemorrhages and right temporalis muscle hemorrhage; (g) right sternocleidomastoid muscle hemorrhage; (h) contusions of the lower left abdomen and upper right back; (i) multiple paired contusions of the left chest, and left and right abdomen; (j) abrasions of the right forearm and right elbow; (k) contusions and abrasions of the left thigh,

knees, and lower legs; (l) cerebral edema; and (m) severe atherosclerotic stenosis of the left anterior descending and right coronary arteries.

54.     Furthermore, upon information and belief, despite DEFENDANTS knowing the full extent of DECEDENT's health and mental condition, at the time of and immediately prior to his death, at no time prior to the discovery of the unresponsive DECEDENT did COUNTY LAW ENFORCEMENT DEFENDANTS attempt to administer help and/or aid, give any medication, treatment, or medical testing to DECEDENT while he was in the restraint of and custody of the COUNTY LAW ENFORCEMENT DEFENDANTS. In fact, DECEDENT's full patient history indicates, he did not receive any form of medical care and/or needed emergency aid from the COUNTY LAW ENFORCEMENT DEFENDANTS while he was in the restrained custody at SCDC prior to his wrongful and untimely death.

55.     Upon information and belief, as stated above, the COUNTY LAW ENFORCEMENT DEFENDANTS deliberately and/or knowingly failed to properly hire, train, and supervise the COUNTY LAW ENFORCEMENT DEFENDANTS, and further, failed to implement and maintain proper procedures, practices, policies and/pr protocols to engage, supervise, and care for persons, like DECEDENT, who were/are suffering from severe emotional, psychological, and/or psychiatric distress in a safe, reasonable, and lawful manner. The COUNTY LAW ENFORCEMENT DEFENDANTS' intentional and deliberate failure in possessing and implementing faulty policies, practices, and procedures in the supervision and treatment of persons suffering from severe emotional, psychological, and/or psychiatric distress, was one of the key substantial factors in DECEDENT'S untimely and wrongful death.

56.     As a direct and/or proximate result of COUNTY LAW ENFORCEMENT DEFENDANTS' unlawful conduct as alleged hereinabove, DECEDENT suffered, without limitation, severe emotional distress and severe physical injuries, whose injuries ultimately lead to his wrongful death while in the custody of the COUNTY LAW ENFORCEMENT DEFENDANTS, all in an amount exceeding the jurisdictional minimum, according to proof at trial.

57.   As a direct and/or proximate result of COUNTY LAW ENFORCEMENT DEFENDANTS' unlawful conduct as alleged hereinabove, PLAINTIFFS suffered, without limitation, severe emotional distress humiliation, embarrassment, mental distress, and anxiety, all in an amount exceeding the jurisdictional minimum according to proof at trial.

58.   As demonstrated by the allegations herewith, despite possessing the knowledge of the risks associated with the condition of the DECEDENT, exhibited clearly on July 25, 2022, the COUNTY LAW ENFORCEMENT DEFENDANTS failed to establish and/or use effective training, tools, policies, practices, protocols, and procedures with the DECEDENT prior to his death. As such, the COUNTY LAW ENFORCEMENT DEFENDANTS displayed an official custom, policy, procedure, and/or practice that was deliberately indifferent to the rights of ill patients under the influence of methamphetamine, including without limitation, of the DECEDENT, who were likely to come into contact with the COUNTY LAW ENFORCEMENT DEFENDANTS while exercising their duties under the color of state law and within the scope of their employment as law enforcement personnel.

59.   As a result of all, each and every one of the tortious acts and omissions described herein, PLAINTIFFS have suffered wrongful death damages that include, without limitation, economic losses associated with (1) the loss of financial support that DECEDENT would have contributed to the family during the life expectancy that DECEDENT had before his death or the life expectancy of PLAINTIFFS,  (2) the loss of gifts or benefits that PLAINTIFFS would have expected to receive from DECEDENT, (3) funeral and burial expenses, and (4) the reasonable value of household services that DECEDENT would have provided.

60.   As a result of the tortious acts and omissions described herein, PLAINTIFFS have suffered and continuous to suffer, without limitation, the loss of love, enjoyment of life, affection, care, society, service, comfort, community, attention, support, companionship, solace, moral support, expectations of future support and counseling, and other benefits and assistance of DECEDENT, their beloved son.

61.   As a result of the tortious acts and omissions described herein, the ESTATE OF GARCIA suffered compensable pre-death pain and suffering.

62.     As a result of the tortious actions and omissions as described herein, the ESTATE of GARCIA is entitled to punitive damages because COUNTY LAW ENFORCEMENT DEFENDANTS acted with the intent to cause injury and/or their conduct was despicable and was done with a willful and knowing disregard of the rights and or safety of DECEDENT.  At all relevant times, COUNTY LAW ENFORCEMENT OFFICERS were aware of the probable consequences of their conduct and deliberately failed to avoid those consequences.

## FIRST CAUSE OF ACTION – EXCESSIVE FORCE (42 U.S.C. § 1983)
### (BY PLAINTIFFS AGAINST ALL DEFENDANTS)

63.     PLAINTIFFS re-allege as though fully set forth at length and incorporates herein by reference all allegations and statements contained in paragraphs 1 through 62, *supra*, of the allegations above.

64.     To state a claim for excessive force pursuant to 42 U.S.C. § 1983, ESTATE OF GARCIA must allege facts sufficient to show: (1) defendant used force in arresting and/or detaining plaintiff; (2) the amount of force was unreasonable; (3) plaintiff was harmed; and (4) defendant's use of unreasonable force was a substantial factor in causing plaintiff's harm.

65.     PLAINTIFFS allege that COUNTY LAW ENFORCEMENT DEFENDANTS, by and through COUNTY LAW ENFORCEMENT DEFENDANTS exercised excessive force against DECEDENT when restraining him, including, without limitation, when provoking DECEDENT, excessively tasing him, and throwing him across the ground, ultimately resulting in physical injuries to the right side of his face and abdomen while at SCDC in the afternoon of July 25, 2022. In fact, COUNTY LAW ENFORCEMENT DEFENDANTS exercised excessive force against DECEDENT when they required, in addition to already four (4) police officers, the Sierra View Medical Center Emergency Department's security personnel to restrain a fifty-seven (57) year old man. The force, weight, and inappropriate restraint tactics caused DECEDENT physical injuries and encouraged DECEDENT'S lawful use of lawful restraint to COUNTY LAW ENFORCEMENT DEFENDANTS' hostile attempts to subdue DECEDENT.

66.     Further, PLAINTIFFS allege that COUNTY LAW ENFORCEMENT DEFENDANTS, by and through COUNTY LAW ENFORCEMENT DEFENDANTS, exercised excessive force against DECEDENT when transporting DECEDENT from the Sierra View Medical Center Emergency Department to SCDC in the afternoon of July 25, 2022. In fact, COUNTY LAW ENFORCEMENT DEFENDANTS exercised excessive force against DECEDENT when DECEDENT suffered two (2) new injuries previously not identified by Sierra View Medical Center Emergency Department, as alleged herein, prior to his arrival to SCDC and as noted by SCDC personnel on July 25, 2022.

67.     COUNTY LAW ENFORCEMENT DEFENDANTS are liable for DECEDENT's injuries because they were integral participants in the excessive force used against him.

68.     In performing the acts described herein, COUNTY LAW ENFORCEMENT DEFENDANTS, acting by and through COUNTY LAW ENFORCEMENT DEFENDANTS in their individual and official capacities and/or under the color of state law committed the act of civil assault and battery in violation of Cal. *Civ. Proc. Code* § 1708, when, without limitation, they acted with the intent to make a harmful and offensive contact with DECEDENT's person.

69.     COUNTY LAW ENFORCEMENT DEFENDANTS, and each of them, by and through COUNTY LAW ENFORCEMENT DEFENDANTS, did, in fact, bring themselves into offensive and unwelcome contact with DECEDENT as described hereinabove.  DECEDENT was physically harmed and/or experienced offensive contact with his person as a result of COUNTY LAW ENFORCEMENT DEFENDANTS' wrongful acts as hereinabove alleged.

70.     At all relevant times, DECEDENT found COUNTY LAW ENFORCEMENT DEFENDANTS' contact to be offensive to his person and dignity. At no time did DECEDENT knowingly consent to any of COUNTY LAW ENFORCEMENT DEFENDANTS' acts alleged hereinabove.

71.     As a direct and proximate cause of the aforementioned acts of COUNTY LAW ENFORCEMENT DEFENDANTS, the DECEDENT was injured and, subsequently,

1  wrongfully killed. Plaintiffs are entitled to compensatory wrongful death and survival action

2  damages according to proof, including, without limitation, for pre-death pain and suffering.

3      72.     As a result of the tortious actions and omissions as described herein, the

4  ESTATE of GARCIA is entitled to punitive damages because COUNTY LAW

5  ENFORCEMENT DEFENDANTS acted with the intent to cause injury and/or their conduct

6  was despicable and was done with a willful and knowing disregard of the rights and or safety of

7  DECEDENT.  At all relevant times, COUNTY LAW ENFORCEMENT OFFICERS were

8  aware of the probable consequences of their conduct and deliberately failed to avoid those

9  consequences.

10      **SECOND CAUSE OF ACTION – NEGLIGENCE**

11      **(BY PLAINTIFFS AGAINST ALL DEFENDANTS)**

12      73.     PLAINTIFFS re-allege as though fully set forth at length and incorporate herein

13  by reference all allegations and statements contained in paragraphs 1 through 72, *supra*, of the

14  allegations above.

15      74.     COUNTY LAW ENFORCEMENT DEFENDANTS, and each of them, had a

16  duty to exercise ordinary and/or reasonable care in activities from which harm might reasonably

17  be anticipated. DECEDENT was in the custody and control of COUNTY DEFENEDANTS,

18  who jointly and individually had a duty to exercise reasonable care when, without limitation,

19  admitting, screening, supervising, restraining and/or subduing inmates, inspecting inmate

20  quarters, keeping guards at designated posts, handling emergency situations in SCDC, and

21  recognizing when padded jail cells were a necessity for admitted inmates.

22      75.     COUNTY LAW ENFORCEMENT DEFENDANTS, and each of them, failed to

23  use ordinary or reasonable care in their interactions with DECEDENT and negligently caused

24  DECEDENT to suffer from severe emotional, psychological, and/or psychiatric distress and,

25  eventually, death, while in his placed jail cell at SCDC. COUNTY LAW ENFORCEMENT

26  DEFENDANTS, and each of the, are liable to ESTATE OF GARCIA for the acts of their

27  employees, agents, and DOES 1 through 100 pursuant to, without limitation, Cal. *Gov't Code* §

28  815.2.

CARPENTER & ZUCKERMAN

CZ

76.     COUNTY LAW ENFORCEMENT DEFENDANTS, and each of them, breached their duty when, without limitation, they failed to implement and enforce policies and procedures to ensure DECEDENT's safety, when they failed to properly train, supervise, discipline, and terminate agents, employees, and/or independent contractors, when they failed to provide adequate surveillance, screening, and supervision at SCDC, when they failed to eliminate known dangers at SCDC, including, without limitation, ensuring jail cells at SCDC possessed adequate protections for persons suffering from severe emotional, psychological, and/or psychiatric distress, including, but without limitation, self-inflicting severe mortal physical injuries to the extent of those suffered by DECEDENT, and ensuring the same policies and procedures to ensure the safety of inmates at SCDC were applied, including to those dangers based on DECEDENT's severe emotional, psychological, and/or psychiatric distress. Without limitation, these failures by COUNTY LAW ENFORCEMENT DEFENDANTS, and each of them, constitute a failure to use reasonable care in their individual capacity and/or within the course and scope of their employment, agency, and/or independent contracting relationship between each other. ESTATE OF GARCIA suffered injuries and losses as a result of such failures emanating from the employment, agency, and/or independent contracting relationship of COUNTY LAW ENFORCEMENT DEFENDANTS while in their custody and control.

77.     As a direct, legal, and proximate cause of DEFENDANTS' aforementioned conduct, ESTATE OF GARCIA suffered injuries to his then physical, mental, and emotional health. These injuries include, without limitation, (a) lacerations of the frontal scalp and right cheek; (b) contusions with lacerations of the nose and lateral left periorbital skin/left cheek; (c) contusion of the right occipital scalp; (d) abrasion of the midline submental chin; (e) laceration and contusion of the mucosa of the upper lip; (f) left occipital sub-scalp hemorrhages and right temporalis muscle hemorrhage; (g) right sternocleidomastoid muscle hemorrhage; (h) contusions of the lower left abdomen and upper right back; (i) multiple paired contusions of the left chest, and left and right abdomen; (j) abrasions of the right forearm and right elbow; (k) contusions and abrasions of the left thigh, knees, and lower legs; (l) cerebral edema; and (m)

severe atherosclerotic stenosis of the left anterior descending and right coronary arteries. ESTATE OF GARCIA, is informed and believes, and thereon alleges that said injuries caused general damages in an amount which will be stated according to proof, but are in an amount that exceeds the minimum jurisdiction amount of this Court.

78. As a further direct and proximate cause of COUNTY LAW ENFORCEMENT DEFENDANTS' aforementioned conduct and injuries, DECEDENT suffered an untimely death while in the custody of COUNTY LAW ENFORCEMENT DEFENDANTS.

79. As a result of all, each and every one of the tortious acts and omissions described herein, PLAINTIFFS have suffered wrongful death damages that include, without limitation, economic losses associated with (1) the loss of financial support that DECEDENT would have contributed to the family during the life expectancy that DECEDENT had before his death or the life expectancy of PLAINTIFFS, (2) the loss of gifts or benefits that PLAINTIFFS would have expected to receive from DECEDENT, (3) funeral and burial expenses, and (4) the reasonable value of household services that DECEDENT would have provided.

80. As a result of the tortious acts and omissions described herein, PLAINTIFFS have suffered and continuous to suffer, without limitation, the loss of love, enjoyment of life, affection, care, society, service, comfort, community, attention, support, companionship, solace, moral support, expectations of future support and counseling, and other benefits and assistance of DECEDENT, their beloved son.

81. As a result of the tortious acts and omissions described herein, the ESTATE OF GARCIA suffered compensable pre-death pain and suffering.

82. As a result of the tortious actions and omissions as described herein, the ESTATE of GARCIA is entitled to punitive damages because COUNTY LAW ENFORCEMENT DEFENDANTS acted with the intent to cause injury and/or their conduct was despicable and was done with a willful and knowing disregard of the rights and or safety of DECEDENT. At all relevant times, COUNTY LAW ENFORCEMENT OFFICERS were aware of the probable consequences of their conduct and deliberately failed to avoid those consequences.

## THIRD CAUSE OF ACTION – NEGLIGENT HIRING, SUPERVISION, AND RETENTION

### (BY PLAINTIFFS AGAINST ALL DEFENDANTS)

83.     PLAINTIFFS re-allege as though fully set forth at length and incorporates herein by reference all allegations and statements contained in paragraphs 1 through 82, *supra*, of the allegations above.

84.     PLAINTIFFS are informed and believes, and thereon alleges that COUNTY LAW ENFORCEMENT DEFENDANTS are responsible for the negligent hiring, supervising, and retaining of COUNTY LAW ENFORCEMENT DEFENDANTS, that were involved throughout the events that transpired on July 25, 2022, as described in the allegations set forth herein.

85.     COUNTY LAW ENFORCEMENT DEFENDANTS, and each of them, owed DECEDENT a duty of care to act in a reasonable and ordinary manner so as to not cause DECEDENT any foreseeable harm.

86.     COUNTY LAW ENFORCEMENT DEFENDANTS, and each of them, failed to use ordinary and reasonable care to avoid injury to DECEDENT. Such failure includes, but are not limited to, COUNTY LAW ENFORCEMENT DEFENDANTS' failure to adopt adequate standards when it COUNTY LAW ENFORCEMENT DEFENDANTS, who were unfit and/or incompetent to perform the work for which they were hired. Such failure further includes COUNTY LAW ENFORCEMENT DEFENDANTS' failure to properly train or correct COUNTY LAW ENFORCEMENT DEFENDANTS, who were negligently failing to perform their job duties. Such failures further include COUNTY LAW ENFORCEMENT DEFENDANTS' failure to properly supervise COUNTY LAW ENFORCEMENT DEFENDANTS, from, without limitation, adequately restraining and placing into custody persons suffering from severe emotional, psychological, and/or psychiatric distress, like DECEDENT, and adequately implementing safe, reasonable, and non-tasing procedures to individuals suffering from severe emotional, psychological, and/or psychiatric distress, like DECEDENT.

87.     COUNTY LAW ENFORCEMENT DEFENDANTS, and each of them further failed to use ordinary and reasonable care to avoid injury to DECEDENT when they failed to properly implement policies to ensure inmate safety and/or negligently failed to provide training on safety policies and procedures for such purposes. ESTATE OF GARCIA is informed and thereon alleges COUNTY LAW ENFORCEMENT DEFENDANTS failed to discipline and/or terminate COUNTY LAW ENFORCEMENT DEFENDANTS. ESTATE OF GARCIA is informed and believes that in retaining COUNTY LAW ENFORCEMENT DEFENDANTS, COUNTY LAW ENFORCEMENT DEFENDANTS ratified their negligent and/or unlawful conduct. Further, ESTATE OF GARCIA is informed and thereon alleges COUNTY LAW ENFORCEMENT DEFENDANTS negligently failed to eliminate known dangers, including, without limitation, providing unsafe jail cells to persons suffering from severe emotional, psychological, and/or psychiatric distress.

88.     PLAINTIFFS are further informed and believes that as the direct and proximate cause of COUNTY LAW ENFORCEMENT DEFENDANTS' failures, DECEDENT suffered severe self-inflicted physical injuries while at the supervision and custody of COUNTY LAW ENFORCEMENT DEFENDANTS. ESTATE OF GARCIA is informed and believes, and thereon alleges, that had COUNTY LAW ENFORCEMENT DEFENDANTS taken reasonable precautions and corrective measures, DECEDENT would be alive today.

89.     COUNTY LAW ENFORCEMENT DEFENDANTS' conduct, and each of them, constitutes negligence and is actionable under the laws of the State of California. As a direct and proximate result of COUNTY LAW ENFORCEMENT DEFENDANTS' acts and omissions, DECEDENT suffered, without limitation, (a) lacerations of the frontal scalp and right cheek; (b) contusions with lacerations of the nose and lateral left periorbital skin/left cheek; (c) contusion of the right occipital scalp; (d) abrasion of the midline submental chin; (e) laceration and contusion of the mucosa of the upper lip; (f) left occipital sub-scalp hemorrhages and right temporalis muscle hemorrhage; (g) right sternocleidomastoid muscle hemorrhage; (h) contusions of the lower left abdomen and upper right back; (i) multiple paired contusions of the left chest, and left and right abdomen; (j) abrasions of the right forearm and right elbow; (k)

contusions and abrasions of the left thigh, knees, and lower legs; (l) cerebral edema; and (m) severe atherosclerotic stenosis of the left anterior descending and right coronary arteries, all of which ultimately led to DECEDENT's untimely wrongful death.

90.     As a result of all, each and every one of the tortious acts and omissions described herein, PLAINTIFFS have suffered wrongful death damages that include, without limitation, economic losses associated with (1) the loss of financial support that DECEDENT would have contributed to the family during the life expectancy that DECEDENT had before his death or the life expectancy of PLAINTIFFS,  (2) the loss of gifts or benefits that PLAINTIFFS would have expected to receive from DECEDENT, (3) funeral and burial expenses, and (4) the reasonable value of household services that DECEDENT would have provided.

91.     As a result of the tortious acts and omissions described herein, PLAINTIFFS have suffered and continuous to suffer, without limitation, the loss of love, enjoyment of life, affection, care, society, service, comfort, community, attention, support, companionship, solace, moral support, expectations of future support and counseling, and other benefits and assistance of DECEDENT, their beloved son.

92.      As a result of the tortious acts and omissions described herein, the ESTATE OF GARCIA suffered compensable pre-death pain and suffering.

93.     As a result of the tortious actions and omissions as described herein, the ESTATE of GARCIA is entitled to punitive damages because COUNTY LAW ENFORCEMENT DEFENDANTS acted with the intent to cause injury and/or their conduct was despicable and was done with a willful and knowing disregard of the rights and or safety of DECEDENT.  At all relevant times, COUNTY LAW ENFORCEMENT OFFICERS were aware of the probable consequences of their conduct and deliberately failed to avoid those consequences.

///

///

///

///

1    **FOURTH CAUSE OF ACTION – VIOLATIONS OF THE BANE CIVIL RIGHTS ACT**

2    **(BY PLAINTIFFS AGAINST ALL DEFENDANTS)**

3        94.    PLAINTIFFS re-allege as though fully set forth at length and incorporates herein

4    by reference all allegations and statements contained in paragraphs 1 through 93, *supra*, of the

5    allegations above.

6        95.    Without limitation, the civil rights of DECEDENT were violated by COUNTY

7    LAW ENFORCEMENT DEFENDANTS when COUNTY LAW ENFORCEMENT

8    DEFENDANTS intentionally interfered with DECEDENT's civil rights by threats,

9    intimidation, and/or coercion as described hereinabove, including, without limitation, when

10   COUNTY LAW ENFORCEMENT DEFENDANTS used excessive force in restraining

11   DECEDENT while at the Sierra View Medical Center Emergency Department and while

12   transporting DECEDENT to SCDC, as alleged earlier herein.

13       96.    Without limitation, these actions by COUNTY LAW ENFORCEMENT

14   DEFENDANTS caused DECEDENT to reasonably believe that if he exercised, without

15   limitation, his right to be free of unreasonable search and seizure and/or excessive force,

16   COUNTY LAW ENFORCEMENT DEFENDANTS would commit violence, including further

17   violence, against his person.

18       97.    At all relevant times, DECEDENT believed that COUNTY LAW

19   ENFORCEMENT DEFENDANTS, who used unlawful excessive force to restrain him at the

20   Sierra View Medical Center Emergency Department and while on the way to SCDC, as alleged

21   earlier herein, had the apparent ability to carry out these unlawful acts and conduct against his

22   life because he was clearly outnumbered and physical overpowered by the COUNTY LAW

23   ENFORCEMENT DEFENDANTS who were acting in said threatening, intimidating, and/or

24   coercive manner.

25       98.    COUNTY LAW ENFORCEMENT DEFENDANTS acted violently against

26   DECEDENT, including, without limitation, when they used unlawful excessive force to restrain

27   him at the Sierra View Medical Center Emergency Department and while on the way to SCDC

28

1  as such, prevented DECEDENT from, without limitation, exercising her right to be free from

2  unreasonable search and seizure and/or excessive force.

3       99.    Without limitation, as a result of COUNTY LAW ENFORCEMENT

4  DEFENDANTS' wrongful actions, on or about July 25, 2022, DECEDENT sustained severe

5  physical injuries including, without limitation, (a) lacerations of the frontal scalp and right

6  cheek; (b) contusions with lacerations of the nose and lateral left periorbital skin/left cheek; (c)

7  contusion of the right occipital scalp; (d) abrasion of the midline submental chin; (e) laceration

8  and contusion of the mucosa of the upper lip; (f) left occipital sub-scalp hemorrhages and right

9  temporalis muscle hemorrhage; (g) right sternocleidomastoid muscle hemorrhage; (h)

10  contusions of the lower left abdomen and upper right back; (i) multiple paired contusions of the

11  left chest, and left and right abdomen; (j) abrasions of the right forearm and right elbow; (k)

12  contusions and abrasions of the left thigh, knees, and lower legs; (l) cerebral edema; and (m)

13  severe atherosclerotic stenosis of the left anterior descending and right coronary arteries, all of

14  which ultimately led to ESTATE OF GARCIA's untimely wrongful death.

15       100.    Without limitation, said wrongful actions and conduct by COUNTY LAW

16  ENFORCEMENT DEFENDANTS was unlawful, discriminatory, and in violation of

17  DECEDENT'S statutory, contractual, and constitutional rights.

18       101.    As a result of this constitutional violation by COUNTY LAW ENFORCEMENT

19  DEFENDANTS, they are liable for ESTATE OF GARCIA'S injuries because, without

20  limitation, they were integral participants in the violations of DECEDENT'S rights, including

21  the denial of DECEDENT'S due process rights.

22       102.    Based on information and belief, COUNTY LAW ENFORCEMENT

23  DEFENDANTS intended to deprive DECEDENT of his enjoyment of the interests protected by

24  the right to be free from, without limitation, unreasonable search and seizure and excessive

25  force and the cognizable interest under the Due Process Clause of the Fourteenth Amendment

26  of the United States Constitution to be free from state actions that deprive her of life, liberty, or

27  property in such a manner as to shock the conscience, including, without limitation, to

28  unwarranted state interference to the persons of DECEDENT in the form of illegal excessive

1    force and unlaw restraint throughout the events, alleged herein, that took place on July 25,

2    2022.

3         103.   As a result of all, each and every one of the tortious acts and omissions described

4    herein, PLAINTIFFS have suffered wrongful death damages that include, without limitation,

5    economic losses associated with (1) the loss of financial support that DECEDENT would have

6    contributed to the family during the life expectancy that DECEDENT had before his death or

7    the life expectancy of PLAINTIFFS,  (2) the loss of gifts or benefits that PLAINTIFFS would

8    have expected to receive from DECEDENT, (3) funeral and burial expenses, and (4) the

9    reasonable value of household services that DECEDENT would have provided.

10        104.   As a result of the tortious acts and omissions described herein, PLAINTIFFS

11   have suffered and continuous to suffer, without limitation, the loss of love, enjoyment of life,

12   affection, care, society, service, comfort, community, attention, support, companionship, solace,

13   moral support, expectations of future support and counseling, and other benefits and assistance

14   of DECEDENT, their beloved son.

15        105.   As a result of the tortious acts and omissions described herein, the ESTATE OF

16   GARCIA suffered compensable pre-death pain and suffering.

17        106.   As a result of the tortious actions and omissions as described herein, the

18   ESTATE of GARCIA is entitled to punitive damages because COUNTY LAW

19   ENFORCEMENT DEFENDANTS acted with the intent to cause injury and/or their conduct

20   was despicable and was done with a willful and knowing disregard of the rights and or safety of

21   DECEDENT.  At all relevant times, COUNTY LAW ENFORCEMENT OFFICERS were

22   aware of the probable consequences of their conduct and deliberately failed to avoid those

23   consequences.

24        107.   As a result of COUNTY LAW ENFORCEMENT DEFENDANTS' acts as

25   alleged herein, ESTATE OF GARCIA is entitled to reasonable attorneys' fees and costs of said

26   suit and a civil penalty of $25,000.00 as provided in Cal. *Civil Code* § 52.  Furthermore, as a

27   result of COUNTY LAW ENFORCEMENT DEFENDANTS, and each of their wrongful and

28

1   illegal conduct as alleged herein, ESTATE OF GARCIA, without limitation, is also entitled to

2   three times their actual damages, which in no case shall be less than $4,000.00.

3   **FIFTH CAUSE OF ACTION – ASSAULT & BATTERY**

4   **(BY PLAINTIFFS AGAINST ALL DEFENDANTS)**

5          108.   ESTATE OF GARCIA re-alleges as though fully set forth at length and

6   incorporates herein by reference, all allegations and statements contained in paragraphs 1

7   through 107, *supra*, of the allegations above.

8          109.   In performing the acts described herein, COUNTY LAW ENFORCEMENT

9   DEFENDANTS, acting in their individual and official capacities and/or under the color of state

10   law committed the act of civil assault and battery in violation of Cal. *Civ. Proc. Code* § 1708,

11   when, without limitation, they acted with the intent to make a harmful and offensive contact

12   with DECEDENT.

13          110.   COUNTY LAW ENFORCEMENT DEFENDANTS, and each of them, by and

14   through their agents, employees, and/or independent contractors, did, in fact, bring themselves

15   into offensive and unwelcome contact with DECEDENT as described hereinabove.

16          111.   At all relevant times, DECEDENT found COUNTY LAW ENFORCEMENT

17   DEFENDANTS' contact, by and through its agents, employees, and/or independent contractors,

18   to be offensive to his person and dignity. At no time did DCECEDENT knowingly consent to

19   any of COUNTY LAW ENFORCEMENT DEFENDANTS' acts alleged hereinabove.

20          112.   DECEDENT was physically harmed and/or experienced offensive contact with

21   his person as a result of COUNTY LAW ENFORCEMENT DEFENDANTS' wrongful acts as

22   hereinabove alleged.

23          113.   As a direct and proximate result of COUNTY LAW ENFORCEMENT

24   DEFENDANTS' misconduct, DECEDENT suffered, without limitation, physical injuries,

25   emotional distress, humiliation, mental distress, and other consequential damages, all in an

26   amount exceeding the jurisdictional amount of this Court to be proven at trial.

27          114.   COUNTY LAW ENFORCEMENT DEFENDANTS' misconduct was willful,

28   wanton, and malicious. At all relevant times COUNTY LAW ENFORCEMENT

DEFENDANTS, by and through agents, employees, and/or independent contractors, acted intentionally or with reckless disregard that their conduct was certain to injure DECEDENT. Consequently, ESTATE OF GARCIA is entitled to recover punitive and exemplary damages from DEFENDANTS according to proof at trial.

## **PRAYER FOR RELIEF**

1. For compensatory, general, and special damages against each Defendant, jointly and severally, in an amount to be proven at trial; and

2. For punitive and exemplary damages against DEFENDANTS in an amount appropriate to punish DEFENDANTS and deter others from engaging in similar misconduct; and

3. For civil penalties as permitted by law; and

4. For trebling of actual damages; and

5. For costs, including reasonable attorneys' fees; and

6. For pre-judgment and post-judgment interest as permitted by law; and

7. For such other relief as this Court may deem proper.

Dated:  August 8, 2023                                  **CARPENTER & ZUCKERMAN ||**

/s/ John Carpenter, Esq.

_____

John C. Carpenter, Esq.
Asa O. Eaton, Esq.
Alina S. Vulic, Esq.
Gabriel Minsal, Esq., LL.M.

*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

PLAINTIFFS hereby demand a trial of all causes by jury.


Dated:  August 8, 2023                           **CARPENTER & ZUCKERMAN ||**

                                                 /s/ John Carpenter, Esq.
                                        _____
                                                 John C. Carpenter, Esq.
                                                 Asa O. Eaton, Esq.
                                                 Alina S. Vulic, Esq.
                                                 Gabriel Minsal, Esq., LL.M.

                                                 *Attorneys for Plaintiffs*